Robert J. Rohrberger, Esq.
Lauren J. Talan, Esq.
FOX ROTHSCHILD LLP
75 Eisenhower Parkway, Suite 201
Roseland, NJ 07068-1600
(973) 992-4800
(973) 992-9125 (fax)
rrohrberger@foxrothschild.com
ltalan@foxrothschild.com
*Attorneys for Plaintiffs ADP Dealer Service, Inc.
and ADP Commercial Leasing, LLC*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
NEWARK VICINAGE

| | |
|---|---|
| ADP DEALER SERVICES, INC., as successor-in-interest to ADP, Inc. and ADP COMMERCIAL LEASING, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>SOUTHERN CALIFORNIA FLEET SERVICES, INC. D/B/A SOUTHERN CALIFORNIA FLEET SERVICES – CORONA; SOUTHERN CALIFORNIA FLEET SERVICES, INC. D/B/A SOUTHERN CALIFORNIA FLEET SERVICES, INC. - ESCONDIDO,<br><br>Defendants. | Civil Action No.:<br><br><br><br>**COMPLAINT** |

Plaintiffs, ADP Dealer Services, Inc., as successor-in-interest to ADP, Inc. and ADP Commercial Leasing LLC (hereinafter collectively referred to as "Plaintiffs"), by and through their attorneys, Fox Rothschild LLP, complaining of the defendants, Southern California Fleet Services, Inc. d/b/a Southern California Fleet Services – Corona and Southern California Fleet Services, Inc. d/b/a Southern California Fleet Services, Inc. – Escondido (hereinafter collectively referred to as "Southern" or "Defendants") herein, allege as follows:

## THE PARTIES

1. Plaintiff ADP Dealer Services, Inc. ("ADPDS"), is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 1 ADP Boulevard, Roseland, New Jersey 07068. ADPDS is authorized to conduct business activities within the State of New Jersey, and conducts business throughout the State. ADPDS is the successor-in-interest to ADP, Inc.

2. Plaintiff ADP Commercial Leasing LLC ("ADPCL") is a Limited Liability Company organized and existing under the laws of the State of Delaware, with its principal place of business located at 15 Waterview Boulevard, Parsippany, New Jersey, 07054. ADPCL is authorized to conduct business activities within the State of New Jersey, and conducts business throughout the State.

3. Upon information and belief, defendant Southern California Fleet Services, Inc. d/b/a Southern California Fleet Services – Corona ("Southern-Corona") is a corporation organized and existing under the laws of the State of California with its principal place of business located at 2855 Sampson Ave, Corona, California 92879.

4. Upon information and belief, defendant Southern California Fleet Services, Inc. d/b/a Southern California Fleet Services, Inc. – Escondido ("Southern-Escondido") is a corporation organized and existing under the laws of the State of California with its principal place of business located at 450 Corporate Drive, Escondido, California 92029.

## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (diversity of citizenship) because there is complete diversity between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

6. This Court has personal jurisdiction over the parties, because Defendants have consented to Jurisdiction in Federal Court in the State of New Jersey and designated the U.S. District Court, District of New Jersey, Newark, New Jersey as proper Venue, by virtue of paragraph 17.(I.) of the Master Services Agreement signed by Defendants on May 26, 2011 ("MSA") and paragraph 12 of the two Equipment Leases signed by Defendants on August 18, 2011 (collectively, "Leases").

7. Thus Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and (c).

8. The MSA and Leases specify that they are governed by the laws of the State of New Jersey.

## COUNT ONE
### (Breach of the Master Services Agreement)

9. Plaintiffs repeat and reiterate each and every allegation set forth herein.

10. ADPDS provides integrated computer operating systems and design, including hardware, software, peripheral, licensing, maintenance and support, for automobile and truck dealerships.

11. ADPDS and Southern entered into the MSA and accompanying schedules for certain services, licenses and/or subleases, software support services, equipment and maintenance services, as set forth in the schedules.

12. Southern signed the MSA on May 26, 2011 and ADP signed the MSA on July 13, 2011.

13. The term of the MSA was to commence upon the signing of the MSA by both parties until all schedules had been completely terminated.

14. The initial term of each schedule was sixty (60) months as indicated thereon, and was to continue thereafter on a month-to-month basis until terminated by either party on at least

thirty days written notice. ADP had the right to terminate any schedule at any time during the initial term.

15. The MSA provided in Paragraph 16, DEFAULT BY CLIENT; REMEDIES UPON DEFAULT, the provisions for a default by Southern.

16. Paragraph 16.A. of the MSA states, that should the client (Southern):

> (i) fail to pay when due any sum of money due hereunder or pursuant to any of the Schedules hereof, (ii) default in the performance of any its other obligations under this Agreement or any of the Schedules hereto, (iii) default in the performance of any of its obligations under any agreement with any affiliate of ADP ..., then, in any such event, ADP, at its option, may, upon written notice thereof, (A) terminate this Agreement and/or any of the Schedules hereto, (B) declare all amounts due and to become due and under the Agreements (including in particular, Paragraph 16.B. below) and/or any or all of the Schedules hereto immediately due and payable; (C) ... render any Services or portions thereof inoperable and/or inaccessible to Client, and/or take immediate possession of any/all Software and items of Equipment not fully paid for, wherever situated and for such purposes enter upon any premises without liability for doing so, and (D) sell, dispose of, hold, use or lease any items of Equipment not fully paid for, as ADP, in its sole discretion, may decide. Client agrees to reimburse ADP for any and all expenses ADP may incur, including reasonable attorney's fees, in taking any of the foregoing actions.

17. Southern specifically acknowledges and agrees in Paragraph 16.B. of the MSA that if Southern terminates the MSA or if ADPDS terminate the MSA because of a default, ADPDS is entitled to recover agreed upon liquidated damages:

> [I]n an amount equal to the product of: (i) the number of full monthly periods remaining after the date of termination until the then end of the applicable Schedule(s) of this Agreement, as applicable; (ii) the applicable monthly charges for the applicable Services, Software Equipment, Support Services and Maintenance Services as of the effective time of any such termination; and (iii) .70 (representing a reduction factor which the parties have mutually determined to be fair and reasonable in the light of the anticipated hard to be caused by the breach, the difficulties of proof of loss, and the unavailability of an adequate remedy.)

18. Southern has breached the MSA and schedules by failing and refusing to make payments in accordance therewith.

19. The MSA also provides that Southern is subject to a late charge of 1.5% per month (but in no event more than the highest interest rate allowed by law), on delinquent payments not paid within ten days after the applicable invoice.

20. ADPDS gave Southern written notice of its breach of the MSA and schedules in its December 11, 2012 letter.

21. Despite repeated demands, Southern has refused to make payments under the MSA.

22. As a direct and proximate result of Southern's breach of its contractual obligations, ADPDS has been damaged.

23. Southern has failed to make payments, and the current balance owed, pursuant to the acceleration clause, is $127,603.69, plus additional accruing late charges, interest, and fees.

24. By reason of Southern's default, ADP is entitled to recover $127,603.69, and additional accruing late charges, interest, and fees.

**WHEREFORE**, Plaintiff ADPDS demands judgment against Southern in the amount of $127,603.69, plus late charges, reasonable attorneys' fees and expenses, continuing interest, costs of suit, and such other and further relief as the Court deems just and proper.

## COUNT TWO
### (Attorneys' Fees and Costs of Collection Due to Breach of MSA)

25. Plaintiffs repeat and reiterate each and every allegation set forth herein.

26. Paragraph 16.A. of the MSA provides that Southern agrees to reimburse ADPDS

5

for any and all expenses ADPDS may incur, "including reasonable attorney's fees, in taking any of the foregoing actions."

**WHEREFORE**, Plaintiff ADPDS demands judgment against Southern in the amount of $127,603.69, plus late charges, reasonable attorneys' fees and expenses, continuing interest, costs of suit, and such other and further relief as the Court deems just and proper.

### COUNT THREE
### (Breach of the Equipment Leases)

27. Plaintiffs repeat and reiterate each and every allegation set forth herein.

28. ADPCL finances computer operating systems.

29. ADPCL is the holder of a two Equipment Leases entered into between ADPCL as Lessor, and Southern as Lessee, signed by Southern on August 18, 2011 (collectively, the "Leases").

30. Pursuant to the Leases, ADPCL agreed to lease Southern certain equipment as set forth in Exhibit A of each Lease (collectively, "Equipment").

31. Southern deleted and initialed the deletion of certain language in paragraph 11 of the Leases. The Leases are identical in form, including the same deletions made by Southern.

32. Pursuant to the Leases, Southern was obligated to make sixty (60) monthly payments under each Lease.

33. Lease No. 78922-1 required a monthly payment of $539.94, plus taxes and fees and commenced on May 31, 2012.

34. Lease No. 78922-2 required a monthly payment of $482.38, plus taxes and fees and commenced on May 24, 2012.

35. To date, Southern has only made two (2) payments on each of the Leases and has refused and failed to make any subsequent payments due and owing under the Leases.

36. Southern has therefore breached the Leases by failing and refusing to make payments in accordance therewith.

37. Paragraph 2 of the Leases provide that if "any part of a payment is not made by Lessee within ten (10) days of the due date, Lessee agrees to pay Lessor a late charge of five percent (5%) of each such late payment but shall not exceed the maximum amount permitted by law … not later than one month following the late payment.

38. As a direct and proximate result of Southern's breach of its contractual obligations, ADPCL has been damaged.

39. By reason of Southern's default, ADPCL is entitled to all rentals, late charges, and other charges due and past due under the Leases.

40. The Leases further provides in paragraph 9, that ADPCL is entitled to "declare due, accelerate, sue for and receive from Lessee the sum of (1) all past due rental payments and other amounts due and owing under the Lease as of he date of declaration of the Event of Default …; and (ii) all future rental payments and other sums to be due and owing for the balance of the entre term of this Lease."

41. Paragraph 9 also states that the Lessee will reimburse for attorneys' fees, court costs and expenses Lessor incurs in enforcing or preserving any of its rights with respect to the Equipment, Lessee or Guarantor.

42. Pursuant to the terms of the Leases, Southern owes ADPCL $59,653.52, plus additional accruing late charges, interest, and fees.

43. By reason of Southern's default under the Equipment Lease, ADPCL is entitled to

recover a total of $59,653.52, plus additional accruing late charges, interest, and fees.

**WHEREFORE**, Plaintiff ADPCL demands judgment against Southern in the amount of $59,653.52, plus late charges, reasonable attorneys' fees and expenses, continuing interest, costs of suit, and such other and further relief as the Court deems just and proper.

## COUNT FOUR
### (For Attorneys' Fees and Costs of Collection Due to Breach of Leases)

44. Plaintiffs repeat and reiterate each and every allegation set forth herein.

45. The Leases provide that in the event of default, ADPCL may recover from Southern all legal expenses and other costs incurred by ADPCL, as lessor, in exercising ADPCL's remedies.

**WHEREFORE**, Plaintiff ADPCL demands judgment against Southern in the amount of $59,653.52, plus late charges, reasonable attorneys' fees and expenses, continuing interest, costs of suit, and such other and further relief as the Court deems just and proper.

## COUNT FIVE
### (Unjust Enrichment)

46. Plaintiffs repeat and reiterate each and every allegation set forth herein.

47. By virtue of Southern's breach of its contractual obligations to ADPDS and ADPCL, Southern has been unjustly enriched at ADPDS and ADPCL's expense.

48. Southern entered into the MSA and Leases for the receipt of goods, services and equipment.

49. Southern received benefits from the MSA and Leases for which ADPDS and ADPCL expected to be remunerated.

50. Southern knew that ADPDS and ADPCL expected to be remunerated pursuant to the MSA and Leases.

51. By reason of the foregoing, Southern has been unjustly enriched.

52. The circumstances are such that it would be unjust and inequitable for Southern to retain said benefit without compensating ADPDS and ADPCL.

53. Equity and good conscience require Southern to make full restitution to ADPDS and ADPCL.

**WHEREFORE**, Plaintiffs demands judgment against Southern in the amount of $187,257.21, plus late charges, reasonable attorneys' fees and expenses, continuing interest, costs of suit, and such other and further relief as the Court deems just and proper.

## COUNT FOUR
### (Quantum Meruit)

54. Plaintiffs repeat and reiterate each and every allegation set forth herein.

55. By providing the foregoing services and equipment to Southern under the MSA and Leases, ADPDS and ADPCL conferred benefits to Southern.

56. ADPDS performed under the MSA with the expectation that Southern would pay for these services.

57. ADPCL performed under the Leases with the expectation that Southern would pay for the equipment.

58. Southern has failed to pay ADPDS an ADPCL for the reasonable value of services and equipment under the MSA and Leases.

59. By reason of the foregoing, Southern has been unjustly enriched.

60. ADPDS and ADPCL are entitled to recover the reasonable value of services on the theory of *quantum meruit*.

**WHEREFORE**, Plaintiffs demands judgment against Southern in the amount of $187,257.21, plus late charges, reasonable attorneys' fees and expenses, continuing interest,

costs of suit, and such other and further relief as the Court deems just and proper.

## COUNT FIVE
### (Conversion)

61.   Plaintiffs repeat and reiterate each and every allegation set forth herein.

62.   Pursuant to the Leases, ADPCL possesses all rights, title and interests in the equipment.

63.   Pursuant to the MSA, ADPDS possesses all rights, title and interests in the software.

64.   Southern has knowledge of ADPDS and ADPCL's rights.

65.   By virtue of Southern's wrongful possession of the equipment and software, Southern has exercised dominion and control over it in a manner inconsistent with ADPDS and ADPCL's rights. In doing so, Southern has converted the equipment and software and has willfully deprived ADPDS and ADPCL of same.

66.   Southern has committed the aforesaid acts intentionally, willfully, wantonly and maliciously with the knowledge and intent that said acts would benefit Southern and cause substantial damage and injury to ADPDS and ADPCL.

67.   As a direct result of the aforesaid wrongful acts by Southern, ADPDS and ADPCL have been damaged.

**WHEREFORE**, Plaintiffs demand judgment against Southern for compensatory damages, incidental damages, and punitive damages, plus reasonable attorneys' fees and expenses, continuing interest, costs of suit, and such other and further relief as the Court deems just and proper.

## COUNT SIX
## (Repossession of the Equipment)

68. Plaintiffs repeat and reiterate each and every allegation set forth herein.

69. Pursuant to the terms of the MSA and Leases, and by virtue of the default by Southern and termination of the MSA and Leases, ADPDS and ADPCL are entitled to immediate possession of the equipment and software.

70. Southern was notified of its defaults and ADPDS and ADPCL's request for the return of all equipment and software in Southern's possession.

71. To date, Southern has not returned any equipment or software in its possession.

**WHEREFORE**, Plaintiffs demands judgment against Southern, awarding ADPDS and ADPCL immediate possession of the equipment and software, and further, ordering and directing Southern to immediately release and relinquish possession of said chattels forthwith.

**FOX ROTHSCHILD LLP**
Attorneys for Plaintiffs ADP Dealer Service, Inc. and ADP Commercial Leasing, LLC

By: _____
Robert J. Rohrberger
Lauren J. Talan
75 Eisenhower Parkway
Roseland, New Jersey 07068
(973) 992-4800
(973) 992-9125 (fax)
rrohrberger@foxrothschild.com
ltalan@foxrothschild.com

Dated: January 16, 2013

11

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

I certify that the matter in controversy is not the subject of any other action pending in any court, or any pending arbitration or administrative proceeding, except for a complaint that has been improperly filed in State Court in Riverside County, California with case number RIC 1300292.

By:

**FOX ROTHSCHILD LLP**
Attorneys for Plaintiffs ADP Dealer Service, Inc. and ADP Commercial Leasing, LLC

Robert J. Rohrberger
Lauren J. Talan
75 Eisenhower Parkway
Roseland, New Jersey 07068
(973) 992-4800
(973) 992-9125 (fax)
rrohrberger@foxrothschild.com
ltalan@foxrothschild.com

Dated: January 16, 2013